# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| JTV MANUFACTURING, INC., <br><br> Plaintiff, <br><br> vs. <br><br> BRAKETOWN USA, INC. d/b/a MAC-TECH, and ERMAK USA, INC., <br><br> Defendants and Third-Party Plaintiffs, <br><br> vs. <br><br> ANTIL S.p.A., <br><br> Third-Party Defendant. | No. C14-4003-LTS <br><br> **MEMORANDUM OPINION AND ORDER ON THIRD-PARTY DEFENDANT'S MOTION TO DISMISS** |

_____

## *I.    INTRODUCTION*

This case is before me on a motion (Doc. No. 34) by third-party defendant Antil S.p.A. (Antil) pursuant to Federal Rule of Civil Procedure 12(b)(2) to dismiss the third-party complaint for lack of personal jurisdiction. The third-party plaintiffs, Braketown USA, Inc. (Braketown), and Ermak USA, Inc. (Ermak), filed a resistance (Doc. No. 38) and Antil filed a reply (Doc. No. 40). I heard oral arguments by telephone on March 17, 2015. Dana Oxley appeared for Antil, Jeff Wright appeared for Braketown and Ermak and William Klinker appeared for plaintiff JTV Manufacturing, Inc. (JTV).[1] The motion is fully submitted and ready for decision.

---

[1] JTV takes no position on Antil's motion.

## II. PROCEDURAL HISTORY

JTV commenced this action against Braketown and Ermak on November 27, 2013, by filing a petition (Doc. No. 4) in the Iowa District Court for O'Brien County. On January 13, 2014, Ermak filed a notice (Doc. No. 1) of removal to this court on the basis of diversity jurisdiction. Braketown consented to the removal. Doc. No. 1-2. JTV then filed an amended complaint (Doc. No. 14) on February 10, 2014.

JTV alleges that it is an Iowa corporation with its principal place of business in Sutherland, O'Brien County, Iowa. Doc. No. 14 at ¶ 1. It contends that Braketown and Ermak are Illinois corporations, with Braketown being headquartered in Wisconsin and Ermak being headquartered in Illinois. *Id.* at ¶¶ 2-3. JTV alleges that Braketown does business in Iowa as a sales agent for Ermak and that it has solicited business from JTV in O'Brien County, Iowa, since 1999. *Id.* at ¶ 4.

JTV's claims against Braketown and Ermak arise from JTV's purchase of a fiber laser cutting machine (the Machine) which consisted of both (a) an Ermaksan Laser Cutter (the Cutter) and (b) an automated load and unload system (the Load System) manufactured by Antil. JTV alleges that it entered into a contract to purchase the Machine from Braketown and Ermak in July 2011 and that the Machine was installed at JTV's facility in Sutherland, Iowa, on or about March 1, 2012. *Id.* at ¶¶ 8-12. According to JTV, the Machine has never operated properly, despite repeated repair efforts by Ermak employees. *Id.* at ¶ 16. JTV asserts claims against Braketown and Ermak for breach of contract, breach of express warranty, breach of the implied warranty of merchantability and breach of the implied warranty of fitness for a particular purpose. *Id.* at pp. 4-7.

Braketown and Ermak have filed answers (Doc. Nos. 26-27) in which they deny liability to JTV and raise various defenses. On October 7, 2014, Braketown and Ermak filed a third-party complaint (Doc. No. 28) against Antil. They allege that Antil is a

limited liability company organized under the laws of Italy that manufactures robotics and automation equipment. Doc. No. 28 at ¶ 4. They further allege that Ermak entered into a contract with Antil under which Antil agreed to supply the Load System that Ermak would then sell to JTV as part of the Machine. *Id.* at 23. Braketown and Ermak contend that the Load System, as supplied by Antil, is the faulty component that has prevented the Machine from operating properly at JTV's facility. *Id.* at ¶¶ 19-21. Braketown and Ermak assert claims against Antil for breach of contract, breach of the implied warranty of merchantability and breach of the implied warranty of fitness for a particular purpose. *Id.* at pp. 4-7. They seek entry of judgment against Antil "in contribution for all sums that will be assessed against Third Party Plaintiffs, in favor of the Plaintiff, JTV Manufacturing, Inc., if any, in such amount that would be commensurate with the degree of misconduct attributable to the Third Party Defendant, Antil S.p.A., in causing the aforementioned Plaintiff's damages, and any such other and further relief as this Court determines appropriate and just." *Id.* at pp. 6-7.

Antil filed its motion (Doc. No. 34) to dismiss the third-party complaint on February 2, 2015. All parties, including Antil, have consented to have a United States Magistrate Judge conduct all proceedings in this case, including trial, the entry of final judgment and all post-trial proceedings, pursuant to 28 U.S.C. § 636(c). Doc. Nos. 30, 41. As such, this case has been referred to me by the Honorable Donald E. O'Brien, Senior United States District Judge. *Id.*

### III. RELEVANT JURISDICTIONAL FACTS

The following facts, which for the most part are set forth in an affidavit (Doc. No. 34-2) supplied by an Antil representative, appear to be undisputed:

Antil is an Italian company that has nearly 50 employees, all of whom live and work in or near Milan, Italy. As is the situation in this case, Antil typically sells its

products and services to machine constructors, who then sell the end products to their own customers. Antil's sale market is divided into two regions – Italy and the rest of the world. It does about half of its business in Italy with most of the rest of its business occurring in other European countries.

Antil has no offices or facilities in the United States. It does not own or lease property in the United States. It does not maintain a telephone listing, mailing address, employees, bank accounts or sales agents in the United States. Antil is not licensed to do business in any state of the United States. It pays no taxes to any governmental entity in the United States and had never previously entered into a contract with any customer or entity in the United States. Nor does it advertise or otherwise market itself in the United States. While Antil's employees sometimes attend trade shows in various locations around the world, they have never attended such an event in Iowa. Antil has never attempted to do business with any entity or individual in Iowa. Before 2011, Antil had sold one other product for installation in the United States.

Ermak is the United States sales representative of Ermaksan, a manufacturing company based in Turkey. One of Ermaksan's products is the Cutter that was sold to JTV as part of the Machine. Antil developed a business relationship with Ermaksan and, prior to 2011, made proposals to supply its equipment to Ermaksan for projects in Europe. Antil became aware of Ermak because of Antil's relationship with Ermaksan.

In 2011, Ermak asked Antil to provide a quotation for a Load System that Ermak would then combine with an Ermaksan Cutter and sell to JTV. Antil submitted its offer to Ermak on June 30, 2011, along with a document entitled "General Sales Conditions." When Antil decided to submit an offer, it knew that Ermak's customer was located in Iowa and that the Antil Load System would thus be installed in Iowa. Ermak issued a written purchase order to Antil, based on Antil's offer, on August 8, 2011. Antil provided a confirmation of the order in September 2011.

Before Antil submitted its offer, two JTV employees came to Italy and viewed an Antil Load System that had been installed at another facility. No Antil employee visited the United States with regard to the transaction until after sale of the Load System to Ermak was complete. When the Load System was ready for delivery, Antil loaded it into a shipping container provided by Ermak at Antil's facility in Milan. The Load System was then shipped from Antil's facility on or about February 6, 2012.

Antil's contract with Ermak provided that Antil would mount and connect the Load System to the Cutter at JTV's facility in Iowa and that Antil would provide a one-day training course at JTV's facility. And, in fact, Antil employees traveled to JTV's facility in March 2012 to install the Load System and provide training. Antil employees made a second trip to JTV's facility in Iowa in April 2012 because the Machine was not working properly. An Antil technician made three additional visits to JTV's facility between June 2012 and October 2013 to provide service. Thus, Antil employees were present in Iowa on five separate occasions in connection with the Machine.

Antil's General Sales Conditions include a section entitled "Jurisdiction" stating that Italian law applies to the contract and that the "exclusive jurisdiction for all possible disputes arising on this contract is that of Milan." As noted above, Antil included the General Sales Conditions with its initial offer to Ermak. Specifically, when Antil submitted its offer to Ermak via email on June 30, 2011, the message included, as attachments, both Antil's offer and the General Sales Conditions. Ermak contends that it had no knowledge of the General Sales Conditions and believed that all conditions of Antil's offer were contained within the offer itself. However, the first page of the offer includes the following statement:

**Attachment:** General Sales Conditions

Doc. No. 34-3 at 1.

## IV. APPLICABLE STANDARDS

***The Rule 12(b)(2) analysis.*** Antil contends the third-party complaint must be dismissed because it is not subject to personal jurisdiction within the state of Iowa. "Personal jurisdiction over a defendant represents the power of a court to enter 'a valid judgment imposing a personal obligation or duty in favor of the plaintiff.'" *Viasystems, Inc. v. EBM–Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 592–93 (8th Cir. 2011) (quoting *Kulko v. Superior Court of Cal.*, 436 U.S. 84, 91 (1978)). Federal Rule of Civil Procedure 12(b)(2) permits a pre-answer motion to dismiss for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2).

To properly allege personal jurisdiction, "a plaintiff 'must state sufficient facts in the complaint to support a reasonable inference that the defendant[ ] can be subjected to jurisdiction within the state.'" *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)), *cert. denied*, 543 U.S. 1147 (2005) (quoting *Block Indus. v. DHJ Indus., Inc.*, 495 F.2d 256, 259 (8th Cir. 1974)). In resisting a Rule 12(b)(2) motion, the plaintiff has the burden of proving facts supporting such jurisdiction. *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir.), *cert. denied,* 131 S. Ct. 472 (2010). The court may consider the allegations of the complaint along with any affidavits and exhibits submitted by the parties. *Id.* The plaintiff's burden, in the absence of an evidentiary hearing, is to make a "minimal" prima facie showing of personal jurisdiction. *K–V Pharm. Co. v. Uriach & CIA, S.A.*, 648 F.3d 588, 592 (8th Cir. 2011). The court "must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in its favor in deciding whether the plaintiff has made the requisite showing." *Id.*

In a diversity case, such as this, personal jurisdiction exists "only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause." *Dever*, 380 F.3d at 1073 (internal quotation marks omitted). Iowa Rule of Civil

Procedure 1.306[2] authorizes the exercise of personal jurisdiction to the full extent allowed by the United States Constitution, meaning the court's inquiry is limited to whether the exercise of personal jurisdiction comports with due process. *Wells Dairy*, 607 F.3d at 518 (citing *Hammond v. Fla. Asset Fin. Corp.*, 695 N.W.2d 1, 5 (Iowa 2005)). Thus, the sole issue presented by Antil's motion is whether its due process rights would be violated by forcing it to defend Braketown's and Ermak's claims in this court.

*Due Process Standards.* In general, due process requires that a nonresident defendant have at least "certain minimum contacts" with the forum state to support the exercise of personal jurisdiction. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Those contacts must be sufficient that requiring the defendant to litigate in the forum state would not "offend traditional notions of fair play and substantial justice." *Id.* at 316 (internal quotation marks and citation omitted). They "must come about by an action of the defendant purposefully directed toward the forum State." *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 112 (1987) (internal citations omitted).

This "'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts," or due to "the 'unilateral activity of another party or a third person.'" *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985) (citations omitted). If the defendant made the deliberate choice to "engage[] in significant activities within a State," or to create "'continuing obligations' between himself and residents of the forum," then "it is

---

[2] Which provides, in relevant part:

> Every corporation, individual, personal representative, partnership or association that shall have the necessary minimum contact with the state of Iowa shall be subject to the jurisdiction of the courts of this state.

I.R.C.P. 1.306.

7

presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Id*. at 475-76 (citations omitted). Thus:

> By requiring that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign," the Due Process Clause "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit[.]"

*Id*. at 472-73 (1985) (citations omitted).

The Eighth Circuit Court of Appeals applies a five-factor test to determine whether a defendant's contacts with the forum state are sufficient to establish personal jurisdiction. *Myers v. Casino Queen, Inc.*, 689 F.3d 904, 911 (8th Cir. 2012). Those factors are: (1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relationship of those contacts with the cause of action; (4) the forum state's interest in providing a forum for its residents; and (5) the convenience or inconvenience to the parties. *Id*. (citing *Precision Const. Co. v. J.A. Slattery Co., Inc.*, 765 F.2d 114, 118 (8th Cir. 1985)). The first three factors are considered to be of primary importance. *Precision Const.*, 765 F.2d at 118.

Personal jurisdiction can be either general or specific. General jurisdiction arises when a nonresident maintains "continuous and systematic" contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984). Under those circumstances, jurisdiction over the nonresident is appropriate even when the claims at issue do not arise out of or relate to its activities in the forum state. *Id*. at 414-15. Here, no party suggests that Antil has had such continuous and systematics contacts with Iowa as to be subject to general jurisdiction.

Specific jurisdiction arises "when the defendant purposely directs its activities at the forum state and the litigation 'result[s] from injuries … relating to [the defendant's] activities [in the forum state.]'" *Myers*, 689 F.3d at 912-13 (quoting *Steinbuch v.*

*Cutler*, 518 F.3d 580, 586 (8th Cir. 2008)). Specific jurisdiction "requires a relationship between the forum, the cause of action, and the defendant. *Id*. at 912 (citing *Helicopteros Nacionales de Colombia*, 466 U.S. at 414). The third factor of the five-factor test "distinguishes between specific and general jurisdiction." *Id*. at 911 (citing *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010)).

The Eighth Circuit has rejected the so-called "proximate cause" test for specific jurisdiction, under which the exercise of jurisdiction is appropriate only if the defendant's contacts with the forum was the legal cause of the plaintiff's injuries. *Id*. at 912-13. Instead, the third factor is satisfied so long as (a) the defendant purposely directed its activities at the forum state and (b) the litigation results from injuries relating to the defendant's activities in the forum state. *Id*. (citation and quotation omitted).

## V. DISCUSSION

Antil contends that it has not had sufficient purposeful contacts with the state of Iowa to justify the exercise of specific jurisdiction in this case. It further alleges that even if sufficient contacts existed, requiring it to defend this action in Iowa would violate its due process rights because of the forum-selection clause contained in its General Sales Conditions. I will address these arguments separately.

### A.   *Minimum Contacts*
#### 1.   *The Five-Factor Test*

The first factor, the nature and quality of Antil's contacts with Iowa, weighs in favor of exercising personal jurisdiction. Antil did not make contact with Iowa by accident. It chose to enter into a contract with Ermak with full knowledge that Antil's equipment (the Load System) would be installed in Iowa. Nor were the contacts minor or incidental, such as the exchange of a few phone calls or email messages with an Iowa

resident. Instead, Antil made a contractual promise to Ermak that it would send its employees to Iowa to install the equipment at JTV's facility and provide training to JTV's employees. Antil also provided a written warranty under which it promised to repair or replace any defective parts during the first 12 months or 2000 hours of operation. Doc. No. 34-6 at 3. The terms of the warranty expressly contemplated that Antil would send employees to the site of the installation as necessary to fulfill Antil's obligations.[3] *Id*. As noted above, Antil sent its employees to Iowa on five separate occasions in furtherance of Antil's contractual obligations to Ermak. Antil's contacts with Iowa were neither unintentional nor incidental.

The second factor, the quantity of the contacts, weighs in Antil's favor. It is undisputed that Antil does not have a long history of systematic contacts with Iowa. Indeed, it is clear that this particular transaction accounts for all of Antil's contacts with Iowa or its residents.

The third factor, the relationship of Antil's contacts with the cause of action, weighs heavily in favor of exercising jurisdiction. JTV has sued Braketown and Ermak because, it claims, the Machine does not work as promised. Antil, via its contract with Ermak, supplied a major component of the Machine. Braketown and Ermak argue that if the Machine does not operate as anticipated, the fault lies with Antil's Load System. And, of course, all of Antil's contacts with Iowa arise from its installation and servicing of the Load System. Antil's contacts with Iowa relate directly to the cause of action.

The fourth factor, Iowa's interest in providing a forum for its residents, weighs in Antil's favor. JTV, the only Iowa resident that is a party to this lawsuit, has no claims against Antil. This court will provide a forum for JTV's claims against Braketown and Ermak regardless of whether Antil is a party. Iowa has little or no interest in providing

---

[3] Specifically: "Costs of travel and accommodation for Antil S.p.A. staff relating to benefits covered by this warranty, if due, shall be charged by Antil S.p.A." Doc. No. 34-6 at 3.

a forum for three nonresidents (Braketown, Ermak and Antil) to resolve their contractual dispute.

The final factor, convenience or inconvenience to the parties, weighs in favor of exercising jurisdiction. JTV seeks damages from Braketown and Ermak based on allegations that the Machine does not operate as warranted. Braketown and Ermak contend that Antil's Load System is the cause of any alleged failures. It is clearly more convenient to all of the parties except Antil to have all of these related claims resolved in one action. The alternative would be two separate proceedings in two different forums, with the witnesses and documentary evidence being largely the same in both.

In short, the application of the Eighth Circuit's five-factor test suggests a finding that Antil is subject to this court's personal jurisdiction. This is especially true in light of the fact that the first three factors are deemed to be of primary importance. *Precision Const.*, 765 F.2d at 118. Antil, however, argues that its contacts with Iowa are not sufficient because (a) the claims against it are contract claims, not tort claims, and (b) it did not purposely avail itself of the privilege of conducting activities within Iowa. I will address these additional considerations below.

### 2. *Other considerations*

Antil contends that Braketown and Ermak improperly rely on tort cases to support the exercise of personal jurisdiction over it. Antil argues that Iowa's interest in adjudicating a tort claim (for example, injuries suffered by an Iowa resident due to a defect in the Load System) would be far greater than Iowa's interest in adjudicating a contribution or indemnity claim by one nonresident against another. While that is undoubtedly true, it is hardly dispositive. I have already concluded that the fourth factor (Iowa's interest in providing a forum for its residents) weighs in Antil's favor because

11

the third-party complaint presents a contract dispute between nonresidents. Antil's "tort versus contract" theory does not change the outcome.

Antil also argues, despite seemingly undisputed evidence to the contrary, that it did not purposefully directs its activities toward Iowa. According to Antil, it simply entered into a contract with an Illinois corporation to build equipment in Italy: "The contract provided for delivery to Ermak USA in Milan, Italy, and Ermak USA in fact provided the shipping container at Anti's Milan facilities and arranged for shipping from Italy." Doc. No. 34-1. While this statement is true as far as it goes, it hardly tells the entire story. As noted above, Antil made contractual promises to install the Load System in Iowa, to provide training to Ermak's customer in Iowa and to provide necessary warranty service in Iowa. As a result of these contractual promises, Antil sent its employees to JTV's facilities in Iowa on five separate occasions. Antil's argument that it did nothing more than supply equipment to Ermak in Milan, Italy, ignores a significant portion of the contract between Antil and Ermak.

As noted earlier, the Supreme Court has explained that the purposeful availment requirement provides "a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Burger King,* 471 U.S. at 472-73. It is undisputed that Antil not only knew its product was destined for installation in Iowa, but bargained for contract terms under which it agreed to provide various services to Ermak's customer in Iowa. Antil's contacts with Iowa were not random or fortuitous. Antil made a business decision to enter into a transaction that required it to provide services to an Iowa resident, in Iowa. Antil purposefully directed its activities toward Iowa. Unless the forum-selection clause (which I will discuss below) compels a different outcome, exercising personal jurisdiction over Antil is not inconsistent with principles of due process or fundamental fairness.

### B. *The Forum-Selection Clause*

Antil's General Sales Conditions provide that the "exclusive jurisdiction" for disputes arising from the contract is that of Milan, Italy. Doc. No. 34-6 at 4. Based on this clause, Antil argues that even if personal jurisdiction would otherwise exist, the exercise of that jurisdiction would violate traditional notions of fair play and substantial justice. In response, Braketown and Ermak deny that the clause became part of the parties' contract and, in any event, contend that it has no impact on the jurisdictional analysis.

For purposes of Antil's motion, I will assume that the clause is part of the contract between Antil and Ermak. Antil has supplied evidence indicating that it included its General Sales Conditions as an attachment to its offer and there is no evidence that Ermak objected to its inclusion when Ermak accepted the offer. While this finding is not final, I conclude that at this stage of the case Antil has made a sufficient showing that the forum-selection clause was part of its contract with Ermak.

The question thus becomes what effect, if any, a forum-selection clause that specifies jurisdiction elsewhere has on the personal jurisdiction analysis. Antil relies primarily on *D'Almeida v. Stork Brabant B.V.,* 71 F.3d 50 (1st Cir. 1995), *cert. denied,* 517 U.S. 1168 (1996), a case that is similar in many significant respects. According to a concurring opinion, the undisputed facts were as follows:

> Stork and Gerritse signed a contract in the Netherlands under which Gerritse would build machines exclusively for Stork. Both companies are headquartered in the Netherlands. Stork is a large international corporation that does business all over the world. Under the contract Stork agreed to purchase the machines manufactured by Gerritse and sell them on the international market. When the machine was finished to Stork's satisfaction, Stork supplied Gerritse with a mailing label and arranged to transport the machine to the buyer. Stork controlled all marketing, sales, and transportation of the machines.

> Gerritse had no contacts with Massachusetts. It did know from the order form furnished it by Stork that the machine was going to Massachusetts. It was delivered to Shawmut Mills[, Massachusetts]. Subsequent to the installation of the machine, Roland Dekens, an engineer-employee of Gerritse, while on a trip to the United States as an agent of Stork, inspected the machine at Shawmut Mills and submitted a report to both Stork and Gerritse.

*Id*. at 52 (concurring opinion). In addition, the contract between Stork and Gerritse designated Holland as the forum for any litigation. *Id*. at 51. In a per curiam opinion that relied heavily on *Asahi*, the First Circuit Court of Appeals concluded that a "minimum contacts" analysis was unnecessary because the exercise of jurisdiction over Gerritse would not be consistent with traditional notices of fair play and substantial justice. *Id*. The court explained:

> The sole cause of action against Gerritse is an action by Stork for indemnification and contribution. The parties must reasonably have expected that any litigation between them would not take place in Massachusetts; indeed, their contract included a forum selection clause designating Holland as the locus of litigation. More important, Massachusetts' interest in the indemnification and contribution dispute are extremely limited, the compensation of its citizen not being at stake.

*Id*. The concurring judge agreed with the outcome but did not agree with the majority's decision to skip the "minimum contacts" analysis, concluding: "To apply the 'fair play and substantial justice' doctrine without any 'minimum contacts' analysis ignores established law and flies in the teeth of binding precedent." *Id*. at 52.

Unfortunately, Braketown and Ermak elected to ignore *D'Almeida*. They argue as if Antil raised the forum-selection clause as an objection to venue rather than to personal jurisdiction. Doc. No. 38 at 8-11. That is clearly not the case. Antil's motion attacks personal jurisdiction, not venue, and plainly relies on the forum-selection clause to argue, in accord with *D'Almeida*, that forcing it to defend itself in Iowa would

14

be inconsistent with fair play and substantial justice. Doc. No. 34-1 at 14-16. I must consider the effect of *D'Almeida* with no guidance from Braketown and Ermak.

*D'Almeida* has been cited by courts only 10 times in the 20 years since it was decided – and never by the First Circuit. As Antil notes, the District of Massachusetts applied *D'Almeida* (which was binding precedent) to hold that a minimum contacts analysis was unnecessary, as the exercise of personal jurisdiction over an Italian entity would have been "inconsistent with the precepts of fair play and substantial justice." *New London County Mut. Ins. Co. v. United Pet Group, Inc.*, 881 F. Supp. 2d 242, 244 (D. Mass. 2012). In that case, an insurer filed a products liability action in Massachusetts against a foreign entity that sold an allegedly-defective aquarium heater. The defendant then filed a third-party complaint seeking contribution and indemnification from the Italian manufacturer. *Id.* at 243. The contract between the defendant and the Italian company included a clause designating London, England, as the forum for any dispute arising out of the contractual relationship. *Id.* at 244.

In addressing the third-party defendant's motion to dismiss for lack of personal jurisdiction, the court stated:

> The First Circuit employs a tripartite analysis to determine whether the exercise of specific personal jurisdiction comports with the Constitution: 1) whether the claims arise out of or are related to the defendant's in-state activities, 2) whether the defendant has purposefully availed itself of the laws of the forum state and 3) whether the exercise of jurisdiction comports with fair play and substantial justice.

*Id.* at 243 (citing *Phillips v. Prairie Eye Center*, 530 F.3d 22, 27 (1st Cir. 2008)). In light of *D'Almeida,* the court found it unnecessary to consider the first two prongs of the analysis, as the third prong was dispositive. *Id.* at 243-44. The court concluded that because of the forum-selection clause, the parties could not have expected that any litigation between them would occur in Massachusetts. *Id.* at 244. Thus, the court declined to exercise jurisdiction over the third-party defendant. *Id.*

Antil argues as if *D'Almeida* and *New London* recognize a forum-selection clause exception to the specific jurisdiction analysis; *i.e.*, even if specific jurisdiction would otherwise exist, it will not be exercised in the face of a contractual provision designating a different forum. I disagree. Indeed, while both opinions may suggest such an exception, the reality is that specific jurisdiction was plainly lacking over the third-party defendants in both cases.

Both courts invoked *Asahi* as dictating a finding of no personal jurisdiction. *D'Almeida,* 71 F.3d at 51; *New London*, 881 F. Supp. 2d at 245. *Asahi*, of course, is the Supreme Court's seminal "stream of commerce" case, teaching that the mere placement of goods into commerce, without more, does not constitute conduct purposely directed toward any state in which those goods ultimately land. *Asahi*, 480 U.S. at 112. The case started as a products liability action arising out of the alleged failure of a motorcycle tire in California. One defendant, Cheng Shin, was a Taiwanese company that manufactured the tire tube. *Id.* at 106. Cheng Shin impleaded Asahi, a Japanese manufacturer of tire valve assemblies that sold those assemblies to various tire tube manufacturers, including Cheng Shin. *Id.* Notably, no contract existed between Cheng Shin and Asahi. *Id.* at 107. Thus, there was no forum-selection clause to consider as part of the jurisdictional analysis.

In determining whether Asahi was subject to personal jurisdiction in California, the Supreme Court explained:

> The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not

convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

*Id.* at 112. Because there was no evidence that Asahi did anything other than place its products into the stream of commerce, the Court concluded that "the facts of this case do not establish minimum contacts such that the exercise of personal jurisdiction is consistent with fair play and substantial justice." *Id.* at 116.

As in *Asahi*, it appears that the third-party defendants in *D'Almeida* and *New London* lacked knowledge that their products were destined for the forum state.[4] Thus, it is understandable that those courts applied *Asahi* as controlling authority. In both cases, a foreign entity sold its goods to another foreign entity without purposely directing any activity towards the forum state. The forum-selection clauses in both cases were hardly dispositive. Pursuant to *Asahi*, minimum contacts simply did not exist.

Here, for the reasons set forth in Section V(A), *supra*, the situation is far different. Antil did not simply sell its Load System to a distributor that later, by pure chance, happened to sell it to a customer in Iowa. Antil not only knew its Load System was destined for installation in Iowa, it entered into a contract through which it promised to install the system in Iowa, train the end user in Iowa and provide ongoing warranty service in Iowa. It then sent its employees to Iowa on five separate occasions pursuant to its contractual obligations. Antil made the business decision to direct its activities toward Iowa. As such, it is subject to personal jurisdiction in Iowa regardless of whether the forum-selection clause became part of its contract with Ermak.

This does not necessarily mean the forum-selection clause is irrelevant. It could be relevant, for example, if Antil moved to dismiss on grounds of forum non conveniens.

---

[4] The concurrence in *D'Almeida* states that there was no evidence the third-party defendant was advised that its product would be delivered to Massachusetts. 71 F.3d at 52. In *New London*, the court stated that the relevant facts were "strikingly similar" to those in *Asahi* and "indistinguishable" from those in *D'Almeida*. 881 F. Supp. 2d at 244.

17

*See, e.g., Atlantic Marine Construction Co. v. U.S. District Court for the Western District of Texas,* 134 S. Ct. 568, 580 (2013) (holding that "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of forum non conveniens"). Here, however, Antil seeks dismissal based solely on an alleged lack of personal jurisdiction pursuant to Rule 12(b)(2). Doc. No. 34. Because Braketown and Ermak have made a prima facie showing of specific jurisdiction, the motion must be denied.

## VI. CONCLUSION

For the reasons set forth herein, Antil's motion (Doc. No. 34) to dismiss for lack of personal jurisdiction is **denied**.

**IT IS SO ORDERED.**

**DATED** this 8th day of April, 2015.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE