# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| JTV MANUFACTURING, INC.<br><br>    Plaintiff,<br><br>vs.<br><br>BRAKETOWN USA, INC, d/b/a MAC-TECH, and ERMAK USA,<br><br>    Defendants and Third-Party Plaintiffs,<br><br>vs.<br><br>ANTIL S.P.A.,<br><br>    Third-Party Defendant. | No. C14-4003-LTS<br><br>**MEMORANDUM OPINION AND ORDER ON THIRD-PARTY DEFENDANT'S MOTION TO DISMISS** |

_____

## I.  INTRODUCTION

This case is before me on a motion (Doc. No. 45) by third-party defendant Antil S.p.A. (Antil) to dismiss on grounds of forum non conveniens. Defendants and third-party plaintiffs Braketown USA, Inc., d/b/a Mac-Tech (Braketown), and Ermak USA, Inc. (Ermak), have filed a resistance (Doc. No. 48) and Antil has filed a reply (Doc. No. 49). Plaintiff JTV Manufacturing, Inc. (JTV), has not taken a position on the motion. No party has requested oral argument and I find that oral argument is not necessary. *See* N.D. Ia. L.R. 7(c). The motion is fully submitted and ready for decision.

## II. PROCEDURAL HISTORY

On November 27, 2013, JTV filed a petition (Doc. No. 4) in the Iowa District Court for O'Brien County naming Braketown and Ermak as defendants. On January 13, 2014, Ermak filed a notice (Doc. No. 1) of removal to this court on the basis of diversity jurisdiction. Braketown consented to the removal. Doc. No. 1-2. JTV filed an amended complaint (Doc. No. 14) on February 10, 2014.

JTV alleges that it is an Iowa corporation with its principal place of business in Sutherland, O'Brien County, Iowa. Doc. No. 14 at ¶ 1. It contends that Braketown and Ermak are Illinois corporations, with Braketown being headquartered in Wisconsin and Ermak being headquartered in Illinois. *Id.* at ¶¶ 2-3. JTV alleges that Braketown does business in Iowa as a sales agent for Ermak and that it has solicited business from JTV in O'Brien County, Iowa, since 1999. *Id.* at ¶ 4.

JTV's claims against Braketown and Ermak arise from JTV's purchase of a fiber laser cutting machine (the Machine) which consisted of both (a) an Ermaksan Laser Cutter (the Cutter) and (b) an automated load and unload system (the Load System) manufactured by Antil. JTV alleges that it entered into a contract to purchase the Machine from Braketown and Ermak in July 2011 and that the Machine was installed at JTV's facility in Sutherland, Iowa, on or about March 1, 2012. *Id.* at ¶¶ 8-12. According to JTV, the Machine has never operated properly, despite repeated repair efforts by Ermak employees. *Id.* at ¶ 16. JTV asserts claims against Braketown and Ermak for breach of contract, breach of express warranty, breach of the implied warranty of merchantability and breach of the implied warranty of fitness for a particular purpose. *Id.* at pp. 4-7.

Braketown and Ermak have filed answers (Doc. Nos. 26, 27) in which they deny liability to JTV and raise various defenses. On October 7, 2014, Braketown and Ermak filed a third-party complaint (Doc. No. 28) against Antil. They allege that Antil is a limited liability company organized under the laws of Italy that manufactures robotics and automation equipment. Doc. No. 28 at ¶ 4. They further allege that Ermak entered into a contract with Antil under which Antil agreed to supply the Load System that Ermak

would then sell to JTV as part of the Machine. *Id.* at ¶¶ 17, 23. Braketown and Ermak contend that the Load System, as supplied by Antil, is the faulty component that has prevented the Machine from operating properly at JTV's facility. *Id.* at ¶¶ 19-21. Braketown and Ermak assert claims against Antil for breach of contract, breach of the implied warranty of merchantability and breach of the implied warranty of fitness for a particular purpose. *Id.* at pp. 4-7. They seek entry of judgment against Antil "in contribution for all sums that will be assessed against Third Party Plaintiffs, in favor of the Plaintiff, JTV Manufacturing, Inc., if any, in such amount that would be commensurate with the degree of misconduct attributable to the Third Party Defendant, Antil S.p.A., in causing the aforementioned Plaintiff's damages, and any such other and further relief as this Court determines appropriate and just." *Id.* at pp. 6-7.

All parties, including Antil, have consented to trial, disposition and judgment by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. Nos. 30, 41. As such, this case has been referred to me by the Honorable Donald E. O'Brien, Senior United States District Judge. *Id.* On February 2, 2015, Antil filed a motion (Doc. No. 34) to dismiss the third-party complaint for lack of personal jurisdiction. I denied that motion by order (Doc. No. 44) filed April 8, 2015. I found that Antil had specifically directed activities toward Iowa such that the exercise of personal jurisdiction over it would not be inconsistent with principles of due process or fundamental fairness. Doc. No. 44 at 12. To the extent Antil relied on a forum-selection clause that allegedly became part of its agreement with Ermak, I concluded that the clause did not impact the personal jurisdiction analysis but could be relevant if Antil moved to dismiss on grounds of forum non conveniens. *Id.* at 17-18. Antil then filed its present motion.

### III. RELEVANT FACTS

Antil is an Italian company that has nearly 50 employees, all of whom live and work in or near Milan, Italy. As is the situation in this case, Antil typically sells its products and services to machine constructors, who then sell the end products to their

own customers. Antil's sales market is divided into two regions – Italy and the rest of the world. It does approximately half of its business in Italy with most of the rest of its business occurring in other European countries.

Ermak is the United States sales representative of Ermaksan, a manufacturing company based in Turkey. One of Ermaksan's products is the Cutter that was sold to JTV as part of the Machine. Antil developed a business relationship with Ermaksan and, prior to 2011, made proposals to supply its equipment to Ermaksan for projects in Europe. Antil became aware of Ermak because of Antil's relationship with Ermaksan.

In 2011, Ermak asked Antil to provide a quotation for a Load System that Ermak would then combine with an Ermaksan Cutter and sell to JTV. Antil submitted its offer to Ermak via email on June 30, 2011. The first page of the offer includes the following statement: "**Attachment:** General Sales Conditions." Doc. No. 45-3 at 12 [emphasis in original]. The General Sales Conditions (GSC) include a section entitled "Jurisdiction" which states that Italian law applies and that the "exclusive jurisdiction for all possible disputes arising on this contract is that of Milan." *Id*. at 7. Ermak then issued a written purchase order to Antil on August 8, 2011. Antil provided a confirmation of the order in September 2011.

The Load System was shipped from Antil's facility in Milan in February 2012. Antil employees then traveled to JTV's Iowa facility in March 2012 to install the Load System and provide training. Antil later sent employees back to JTV's facility on multiple occasions to provide service.

## IV. APPLICABLE STANDARDS

The doctrine of forum non conveniens permits a federal court to decline to exercise jurisdiction and dismiss a case that would more appropriately be brought in a foreign jurisdiction. *Am. Dredging Co. v. Miller*, 510 U.S. 443, 447–49 (1994). The Supreme Court has described the relevant considerations as follows:

> An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility [sic] of a judgment if one is obtained….
>
> Factors of public interest also have [a] place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

*Id.* at 448-49 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947)). The doctrine of forum non conveniens should be applied sparingly, and only under exceptional circumstances. *K-V Pharmaceutical Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 597-98 (8th Cir. 2011). "The defendant has the burden of persuasion in proving all elements necessary for the court to dismiss a claim based on forum non conveniens." *Id.* (quoting *Reid–Walen v. Hansen*, 933 F.2d 1390, 1393 (8th Cir. 1991)).

The analysis changes, to some extent, when the litigants are parties to an agreement that includes a forum-selection clause. The Supreme Court recently explained:

> In the typical case not involving a forum-selection clause, a district court considering a [28 U.S.C.] § 1404(a) motion (or a *forum non conveniens* motion) must evaluate both the convenience of the parties and various public-interest considerations. Ordinarily, the district court would weigh the relevant factors and decide whether, on balance, a transfer would serve "the convenience of parties and witnesses" and otherwise promote "the interest of justice." § 1404(a).

5

The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which "represents the parties' agreement as to the most proper forum." . . . The "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." . . . For that reason, and because the overarching consideration under § 1404(a) is whether a transfer would promote "the interest of justice," "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." . . . The presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways.

*Atlantic Marine Construction Co. v. U.S. District Court for the Western District of Texas*, 134 S. Ct. 568, 581 (2013) (footnote and citations omitted).[1] The Court then described the three adjustments as follows:

First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted. . . .

Second, a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests. When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum. . . .

As a consequence, a district court may consider arguments about public-interest factors only. . . . Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases. Although it is "conceivable in a particular case" that the district court "would refuse to transfer a case notwithstanding the

---

[1] While the Court was addressing a motion to transfer venue pursuant to 28 U.S.C. § 1404(a), its reference in the alternative to "a *forum non conveniens* motion" makes it clear that the analysis applies equally to either type of motion. 134 S. Ct. at 581; *see also Community Voice Line, L.L.C. v. Great Lakes Comm. Corp.*, No. C12-4048-MWB, 2014 WL 3102124, at *3-4 (N.D. Iowa July 7, 2014) (applying the *Atlantic Marine* forum-selection clause analysis to a forum non conveniens motion).

6

counterweight of a forum-selection clause," . . . such cases will not be common.

Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations. . . . A federal court sitting in diversity ordinarily must follow the choice-of-law rules of the State in which it sits. . . . However, we previously identified an exception to that principle for § 1404(a) transfers, requiring that the state law applicable in the original court also apply in the transferee court.

*Id.* at 581-82 (footnote and citations omitted).

## V. DISCUSSION

As the previous section suggests, the forum non conveniens analysis changes in the presence of a contractual forum-selection clause. Here, Antil argues that its contract with Ermak includes such a clause. Ermak disagrees. I must resolve this dispute before launching into the analysis.

### A. *Is the Forum-Selection Clause Part of the Antil–Ermak Contract?*

As noted above, the party seeking dismissal on grounds of forum non conveniens bears the burden of proof as to "all elements necessary for the court to dismiss a claim based on forum non conveniens." *K-V Pharmaceutical Co.*, 648 F.3d at 597-98 (quoting *Reid–Walen*, 933 F.2d at 1393). Antil, the moving party, relies heavily on the forum-selection clause to support its argument. Antil must prove that the clause became part of the parties' agreement.

This raises the question of which jurisdiction's law applies to the analysis. Neither party has addressed this issue.[2] The Eighth Circuit Court of Appeals, while

---

[2] Both parties cite a combination of Iowa and federal authorities in support of their arguments as to whether the forum-selection clause became part of the contract. Doc. No. 45-1 at 6-7; Doc. No. 48 at 2-5.

acknowledging that there is some disagreement among the circuits, has applied federal law to forum-selection clauses on grounds that the issues raised by such clauses are procedural in nature. *See United Elec. Co. v. Energy Ins. Mut. Ltd.*, 689 F.3d 968, 971 (8th Cir. 2012); *Fru-Con Constr. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 538 (8th Cir. 2009); *Servewell Plumbing, LLC v. Federal Ins. Co.*, 439 F.3d 786, 789 (8th Cir. 2006); *Rainforest Café, Inc. v. EklecCo, LLC*, 340 F.3d 544, 546 (8th Cir. 2003); *Sunworld Lines, Ltd. v. March Shipping Corp.*, 801 F.2d 1066, 1068-69 (8th Cir. 1986).[3] Based on these authorities, I will apply federal law to the question of whether the forum-selection clause became an enforceable term of the parties' agreement.

Federal courts focus, in the first instance, on whether the clause at issue was freely communicated and negotiated between the parties. For example, the Supreme Court has stated: "There are compelling reasons why a *freely negotiated* private international agreement, unaffected by fraud, undue influence, or overweening bargaining power, such as that involved here, should be given full effect." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12-13 (1972) (emphasis added; footnote omitted). In *Servewell*, the Eighth Circuit observed that a forum-selection clause is presumptively valid if it "is the fruit of an arm's-length negotiation." 439 F.3d at 789. Other courts consider whether the clause was "reasonably communicated to the party resisting enforcement." *Altvater Gessler– J.A. Baczewski Int'l (USA) Inc. v. Sobieski Destylarnia S.A.*, 572 F.3d 86, 89 (2d Cir. 2009); *see also Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009).

Based on the record before me, I find that Antil has failed to prove that the forum-selection clause set forth in its GSC was reasonably communicated and freely negotiated between Antil and Ermak. Antil states: "The Offer expressly incorporated the General

---

[3] The Eighth Circuit has noted, however, that it may be appropriate to consider the forum state's public policy concerns in the course of interpreting and enforcing forum-selection clauses. *Farmland Industries, Inc. v. Frazier–Parrott Commodities, Inc.*, 806 F.2d 848, 852 (8th Cir. 1986).

8

Sales Conditions on the first page of the Offer. (Ex. B at 12, Offer.)." Doc. No. 45-1 at 3. This is a stretch. The referenced page states: "**Attachment:** General Sales Conditions." Doc. No. 45-3 at 12 [emphasis in original]. It does not state that the terms described in the GSC were incorporated into the offer. Antil may have intended to communicate that the terms contained in the GSC were part of its offer, but it did not say so. Antil points to nothing in its offer, or in the parties' communications, in which it expressly advised Ermak that its offer was subject to Ermak's acceptance of the GSC's terms.

The cases Antil relies upon concerning the incorporation of various terms and conditions involve contract documents that contained express incorporation language. *See, e.g., Nordyne, Inc. v. International Controls & Measurements Corp.*, 262 F.3d 843, 844 (8th Cir. 2001) ("Customer's order is accepted on the express condition that the terms and conditions set forth on the face and reverse side of this invoice . . . shall apply"); *N&D Fashions, Inc. v. DHJ Industries, Inc.*, 548 F.2d 722, 724 (8th Cir. 1976) ("This contract is subject to all the terms and conditions printed on the reverse side"); *In re Estate of Thompson,* 2012 WL 469985, at *4, 812 N.W.2d 726 (Iowa Ct. App. 2012) (table) ("attached hereto, marked as Exhibit "A" and by this reference made a part hereof"); *In re Estate of Kokjohn*, 531 N.W.2d 99, 100 (Iowa 1995) ("The undersigned . . . agree that the terms and conditions of the Time Deposit, Open Account Agreement as set forth in the passbook accompanying this account shall apply"). Antil's offer contained no such language. By simply stating that the GSC was an "attachment," Antil failed to communicate that its offer was subject to, and conditioned upon, Ermak's acceptance of the GSC's terms.

Moreover, as Ermak points out, there were discrepancies in Antil's references to its offer numbers. In the text of its email dated June 30, 2011, Antil discussed Offer D1062. Doc. No. 45-3 at 3. However, the offer attached to the June 30, 2011, email was numbered "Offer D1061," Doc. No. 45-3 at 12-37, and the GSC that Antil relies on to contend that its forum-selection clause is part of the contract makes reference to "offer

9

d1064" on each of its pages. Doc. No. 45-3 at 4-11. When Ermak responded on August 8, 2011, it included an attachment that referenced offer number D1062. Doc. No. 45-4 at 1. While these inconsistent references may have been typographical errors, the fact that the offer numbers do not match makes it even more difficult for Antil to demonstrate that the GSC was implicitly incorporated into its offer.

For purposes of Antil's motion to dismiss, I find that Antil has failed to meet its burden of proving that the GSC's forum-selection clause became part of the agreement between Antil and Ermak. As such, I will analyze Antil's forum non conveniens arguments without regard to that clause.

## B.     *Should the Third-Party Complaint be Dismissed for Forum non Conveniens?*

When assessing a forum non conveniens motion, the court must first identify an adequate alternative forum. *Reid-Walen*, 933 F.2d at 1393 n. 2. A forum is adequate when the defendant is "amenable to process there." *Pro Edge, L.P. v. Gue*, 374 F. Supp. 2d 711, 755 (N.D. Iowa 2005). Ermak does not contend that Milan, Italy – Antil's base of operations – is an inadequate alternative forum. Once an adequate forum is identified, the court must balance the relevant private and public interest factors. *Id*.

### 1.     *Private interest factors*

The private interest factors are (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (3) the possibility of viewing premises, if view would be appropriate to the action; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Am. Dredging,* 510 U.S. at 448. While neither party addressed these factors,[4] I find that they weigh against dismissal.

---

[4] I understand why Antil chose not to address the private interest factors, as it relies on the forum-selection clause. *See Atlantic Marine,* 134 S. Ct. at 582 (court should not consider private

Antil's Load System was installed at JTV's facility in Iowa and has, allegedly, failed to operate properly there. Witnesses concerning the Load System's performance, and the efforts to remedy its alleged failures, are likely to be (a) JTV employees who are located in Iowa, (b) Ermak and/or Braketown employees who are located in Illinois and/or Wisconsin, and (c) Antil employees based in Italy who will be accessible because Antil is a party to this case. Antil has not shown that it would be more inconvenient for it to present its case in Iowa than for Ermak to present its case in Italy. On balance, the private interest factors favor maintaining the present forum for this dispute.

### 2. *Public interest factors*

The public interest factors are (1) the administrative difficulties that arise when litigation is piled up in congested centers instead of being handled at its origin; (2) the imposition of jury duty burdens on the people of a community which has no relation to the litigation; (3) the local interest in having localized controversies decided at home; and (4) the appropriateness of conducting the trial of a diversity case in a forum that is at home with the state law that must govern the case. *Am. Dredging,* 510 U.S. at 448-49. These factors, likewise, weigh against dismissal. With regard to the first factor (court congestion), permitting Ermak to maintain its third-party claims against Antil will have virtually no impact on this court, as JTV's claims against Ermak and Braketown will proceed with or without those third-party claims. If anything, bifurcating this dispute into two separate lawsuits, one here and one elsewhere, would simply add to the congestion in the other forum without a corresponding reduction here.

The second factor, the burden of jury duty on a community with no relation to the litigation, weighs against dismissal. It can hardly be said that Iowa has no relation to the dispute between Ermak and Antil. The sole purpose of the contract between those parties

---

interest factors when a forum-selection clause applies). Ermak's reason for skipping those factors is less clear.

was to provide a Load System that would be installed, with the rest of the Machine, at JTV's facility in Iowa. Antil then installed the Load System in Iowa and provided training and service in Iowa. The dispute between Ermak and Antil as to the cause of the Machine's alleged failures bears at least some relation to Iowa. Moreover, Ermak has not requested a jury trial on its third-party claims against Antil. Even if Antil demands a jury, there will be no additional burden on Iowa jurors because JTV has already demanded a jury trial on its claims. Adding Ermak's third-party claims against Antil to the jury's list of tasks will not be an unreasonable burden.

As for the third factor (localized controversies), this case is as localized to Iowa as it is to any other jurisdiction. As noted above, all parties agreed and understood that the Machine would be installed and operated at JTV's facility in Iowa. Antil performed installation and service work in Iowa. In light of JTV's allegations that the Machine does not operate properly, there is nothing unusual about having the entire controversy, including Ermak's third-party claims against Antil, litigated in Iowa.

The fourth factor addresses choice-of-law concerns. I have already determined that Antil failed to satisfy its burden of proving that the GSC became part of the agreement between Antil and Ermak. Thus, the GSC's invocation of Italian law is not controlling. In the absence of a choice of law clause, Iowa's choice-of-law rule – the "most significant relationship" test set forth in the Restatement (Second) of Conflict of Laws – will apply. *Pro Edge*, 374 F. Supp. 2d at 736. Neither party has conducted an analysis under that test. I find that it is not necessary to do so at this point. Instead, I will assume for purposes of the forum non conveniens analysis that the laws of a jurisdiction other than Iowa will apply to Ermak's claims against Antil. This is the sole factor that weighs in favor of dismissal.

Based on this analysis, I find that the public interest factors, like the private interest factors, weigh against dismissal. Antil has fallen far short of demonstrating that this case

presents the "exceptional circumstances" necessary to justify dismissal due to forum non conveniens.[5]  *K-V Pharmaceutical,* 648 F.3d at 597-98.

## VI. CONCLUSION

For the reasons set forth herein, Antil's motion (Doc. No. 45) to dismiss on grounds of forum non conveniens is **denied**.

**IT IS SO ORDERED.**
**DATED** this 23rd day of June, 2015.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE

---

[5] Antil relies on *Asahi Metal Industry Co. v. Superior Court of California,* 480 U.S. 102 (1987), to argue that the public interest factors weigh heavily in its favor because it is a foreign defendant. Doc. No. 45 at 10.  However, *Asahi*'s holding concerned requirements for establishing personal jurisdiction, not for dismissing an action on grounds of forum non conveniens.  *Id*. at 116.  In fact, the Court stated that "when minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant."  *Id*. at 114.  Personal jurisdiction over Antil has been established. *See* Doc. No. 44.